UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE ROBERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>SGT. SINGH, et al.,<br><br>    Defendants. | No. 2:14-cv-2302 WBS KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff raises Eighth Amendment claims against defendants Singh, Cotter, Pendergrass, and Osurji.[1] Defendants' motion for summary judgment is before the court. As set forth more fully below, the undersigned finds that defendants' motion for summary judgment should be granted.

II. Plaintiff's Complaint

Plaintiff alleges that on August 31, 2014, while he was on suicide watch, Sgt. Singh "O.C. pepper sprayed" plaintiff "for no justifiable reason," and that Correctional Officer Cotter

---

[1] In the answer, counsel for defendants noted that defendant Osuri was sued by the name of Jackson, which is Mr. Osuri's first name, and asked the court to update its records accordingly. (ECF No. 15 at 1.) However, in the motion for summary judgment, as well as throughout plaintiff's deposition, this defendant is identified as Mr. Osurji. Accordingly, the court refers to this defendant as Osurji.

1

1  "continuously punched [plaintiff] in the right side of [his] face while [plaintiff was] on the ground
2  [and] in restraints . . . [and] not being a threat."  (ECF No. 1 at 3.)  Plaintiff claims that defendants
3  Osurji and Pendergrass were present yet took no steps to prevent or stop defendants Singh and
4  Cotter from using excessive force on plaintiff.  Plaintiff alleges that he suffered permanent
5  damage to his right eye, as well as a burst blood vessel in his right eye, swollen face, black eye,
6  and blurry vision.  Plaintiff states he was sent to U.C. Davis Hospital due to the seriousness of his
7  injuries, where he received laser surgery to prevent him from going completely blind.  (ECF No.
8  1 at 4.)

III.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the grounds that plaintiff's lawsuit is barred by Heck v. Humphrey, 512 U.S. 477, 483-87 (1994), and Edwards v. Balisok, 520 U.S. 641, 646-48 (1997); plaintiff did not exhaust administrative remedies regarding the claims until after he filed the instant lawsuit; and plaintiff's claims against defendants in their official capacities are barred under the Eleventh Amendment.

In his unverified opposition, signed December 6, 2015, plaintiff states that he is an inmate at the E.O.P. level of mental health care, and was "led to believe a 1983 claim could be filed before exhausting a 602."  (ECF No. 65 at 1.)  Plaintiff claims he is not required to respond to defendants' warning under Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) ("Rand notice"), because it asks inmate Jose Luis Segura to read it.  (ECF No. 65 at 2.)  Plaintiff states that "[a]ll documents seem to be in order and authentic after [his] evaluation."  (ECF No. 65 at 3, 5.)  Plaintiff states that he does not dispute "A-E" or undisputed facts Nos. 41, 42, 43, 44.  (ECF No. 65 at 8, 9.)

By order signed December 11, 2015, the court noted the typographical error in the Rand notice provided by defendants.  (ECF No. 66 at 1.)  However, the purpose of the Rand notice was explained, and plaintiff was provided an additional and separate Rand notice.  (ECF No. 66 at 3.)  Also, plaintiff was provided until January 28, 2016, in which to file an opposition.  (ECF No. 66 at 2.)  Plaintiff did not file a further opposition to the motion.

////

In reply, defendants argue that plaintiff may not proceed with his § 1983 claim because a judgment in his favor would necessarily invalidate the guilty finding at his disciplinary hearing that resulted in the loss of good time credits. (ECF No. 67 at 1.) Defendants contend that plaintiff did not exhaust his excessive force claims against defendants Singh and Cotter until over four months after he filed the instant lawsuit, and did not exhaust his failure to protect claims against defendants Pendergrass and Osurji at all. (ECF No. 67 at 1.) Finally, defendants contend that plaintiff is barred by the doctrine of sovereign immunity from proceeding against defendants in their official capacities.

IV.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477

////

U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

4

are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on November 19, 2015, and December 11, 2015 (ECF Nos. 58-2), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

V. Facts[2]

1. Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and during all times relevant herein was housed at the California Correctional Health Care Facility ("CHCF") in Stockton, California.

2. At all times relevant herein, defendants Sergeant Singh, Officer Cotter, Psych Tech Pendergrass, and Psych Tech Osurji were employed at CHCF.

3. On the morning of August 31, 2014, plaintiff was on suicide watch under defendant Osurji's care.

4. Inmates who are on suicide watch are limited in the type of property they are permitted to possess in their cell, and plaintiff only had a safety blanket and a suicide smock.

5. Plaintiff ate breakfast in his cell at approximately 6:30 a.m. that morning, and afterwards, defendant Pendergrass approached plaintiff's cell and told him that a psychiatrist, Dr. Scurry, had ordered removal of a shelf unit from plaintiff's cell.

---

[2] For purposes of the pending motion, the following facts are found undisputed, unless otherwise indicated. Documents submitted as exhibits are considered to the extent that they are relevant, and despite the fact that they are not authenticated because such documents could be admissible at trial if authenticated.

5

6. Plaintiff did not believe the shelf should be removed from his cell because he didn't know why a psychiatrist would give an order to remove something from an inmate's cell.

7. At approximately 7:20 a.m., defendant Singh went to plaintiff's cell with another non-party sergeant to remove the shelf.

8. Plaintiff was at the cell door, and defendant Singh asked if plaintiff was willing to speak with him.

9. Plaintiff did not want to exit the cell, but agreed to talk to defendant Singh at the cell door.

10. Because other inmates in nearby cells could hear their conversation, defendant Singh asked plaintiff if he could enter the cell to talk to plaintiff in order to protect plaintiff's privacy.

11. Plaintiff did not show any signs of agitation or displeasure at this suggestion.

12. Defendant Singh entered plaintiff's cell, and asked if plaintiff had anything in the cell that he could use to harm himself.

13. Plaintiff suddenly became angry and yelled, "I thought we was [sic] going to talk. You better not touch nothing [sic] in my cell."

14. Defendant Singh attempted to diffuse plaintiff's anger by motioning with his right hand and asking plaintiff to calm down and relax.

15. Plaintiff struck defendant Singh.

16. During his deposition, plaintiff conceded that he shoved defendant Singh.

17. Defendant Osurji characterized plaintiff's actions as an "attack," and stated that plaintiff stepped toward defendant Singh in an aggressive and tense manner, yelling and cursing, using hand gestures, and then plaintiff hit defendant Singh.[3]

---

[3] Plaintiff claims that defendant Osurji agreed with plaintiff in the CDCR-22, but that Osurji contradicted himself once this lawsuit was filed. (ECF No. 65 at 9.) However, plaintiff did not provide a copy of the CDCR-22 to which he refers, and fails to cite to one provided by defendants. Indeed, in his statement of disputed facts, #51, plaintiff claims that defendants Pendergrass and Osurji failed to write a report about the incident. (ECF No. 65 at 10.) In any event, defendant Osurji's statements were given to Correctional Officer J. Lopez on August 31, 2014, in connection with the September 12, 2014 rules violation report (ECF No. 58-5 at 39), both of which occurred prior to the filing of this lawsuit on October 2, 2014 (ECF No. 1).

18. Plaintiff knows that it is against prison regulations to shove a staff member.

19. Plaintiff was subsequently sprayed with a two second burst of pepper spray by defendant Singh.

20. Defendant Singh approached plaintiff and attempted to guide plaintiff's hand behind his back so that he could apply the handcuffs, but plaintiff broke free from defendant Singh's grasp and used his left elbow to strike defendant Singh twice on his neck and left chest.

21. During his deposition, plaintiff conceded that as soon as he felt someone touch him after he was pepper sprayed, he fought back by swinging his fists at all responding staff that got near him for approximately one minute.

22. Plaintiff does not know who he hit while he was "struggling and tussling," because he had pepper spray in his face.

23. Defendant Singh remained fearful for his own safety, as well as that of other staff members, and so he and another officer used their strength and body weight to force plaintiff to the ground.

24. Even on the ground, plaintiff continued to actively resist staff by trying to free his arm, moving his body violently from left to right, and attempting to get up off of the ground.

25. Subsequently, plaintiff was handcuffed.

26. Plaintiff was then escorted out of his cell, medically evaluated, and decontaminated from the effects of the pepper spray.

27. Following this incident, an investigation into the use of force was conducted and a Crime Incident Report was completed.

28. The Correctional Lieutenant who reviewed the incident determined that plaintiff would be issued a Rules Violation Report (RVR) related to the incident for battery on a peace officer resulting in use of force.

29. When interviewed by an Investigative Employee for the purpose of plaintiff's RVR hearing, defendants Singh and Cotter stated that they never struck plaintiff.

30. Non-party Sergeant Alvarez, who was also present in plaintiff's cell during this incident, stated that he never struck plaintiff.

31. Non-party Officer Cisneros also stated that he did not hit plaintiff, but he did observe plaintiff strike defendant Singh, then refuse defendant Singh's order to back up and get down and walk toward defendant Singh with clenched fists.

32. Plaintiff is serving a term of twenty-five years to life.

33. Following a hearing at which plaintiff refused to appear, plaintiff was found guilty of this RVR, and he lost 150 days of credit as a result.

34. The hearing officer's guilty finding was based on: (1) defendant Singh's written report; (2) the CDC-837 Crime/Incident Report, Log No. CHCF-FACB-14-08-0418; (3) the CDC-837 Part C Supplemental Report authored by Sergeant Alvarez and G. Cisneros; and (4) the investigative report prepared by Officer J. Lopez.

35. The RVR has not been overturned either through the inmate appeal process or by a petition for writ of habeas corpus, and his lost credits have not been restored.

36. Plaintiff knows there is an appeal process available at CHCF.

37. Plaintiff knows what a 602 is, and he is familiar with the inmate appeal process and the corresponding three levels of review.

38. Plaintiff understands that in order to exhaust an appeal, he must pursue it through the third level of review.

39. Plaintiff understands that in order to exhaust an inmate appeal, he must first submit the appeal to the first level, and then he must "respond to the first level after they respond to [him]" by explaining why he is dissatisfied with the first level response.

40. Plaintiff understands that the same procedure applies at the second level of review.

41. Plaintiff explained in his deposition that "[i]f you're not satisfied with the response [received at the second level of review], then you send it forward to the Chief of Appeals in Sacramento, and you wait for them to process it to see the finalization of it. If you're still not satisfied with the third level in Sacramento, that's when you either take it up to the courts, higher level."

42. Plaintiff submitted an appeal related to this lawsuit, institutional appeal log no. CHCF-14-01079, third level review log no. 1406875.

43. The assignment of institutional appeal log no. CHCF-14-01079 at the third level of review is a typo, as further review of the appeal itself and plaintiff's institutional appeal history shows that CHCR assigned the appeal institutional log no. CHCF-14-01879.

44. This is the appeal that plaintiff believes served to exhaust his administrative remedies regarding his claims in the instant lawsuit. (Pl.'s Depo. at 24:12-17.)

45. Plaintiff did not file any other appeals related to his claims in this lawsuit, and a review of his appeal history both at CHCF and the third level of review, confirms this fact.

46. In that appeal, plaintiff complained that defendants Singh and Cotter used excessive force on him on August 31, 2014; however, plaintiff did not complain that defendants Pendergrass or Osurji failed to protect him from the alleged excessive use of force.

47. Plaintiff filed this lawsuit on October 2, 2014.

48. On February 16, 2015,[4] the third level review was issued in CHCR-14-01079, third level review no. 1406875.

49. Plaintiff conceded in his complaint that he had not exhausted available administrative remedies at the time he filed this lawsuit. (ECF No. 1 at 2.)

## VI. Exhaustion of Administrative Remedies

Defendants contend that plaintiff failed to exhaust his administrative remedies prior to filing the instant action. Specifically, defendants argue that plaintiff did not exhaust his remedies as to defendants Singh and Cotter until after plaintiff filed this action, and wholly failed to exhaust his remedies as to defendants Pendergrass and Osurji. Plaintiff claims that he was led to believe a civil rights claim could be filed before a 602 was exhausted.

### A. Standards Governing Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

---

[4] The copy of the third level decision clearly reflects the year, 2015. (ECF No. 58-6 at 7.) However, it does not clearly reflect the date or the month. (Id.) M. Voong, Chief of the Office of Appeals for the CDCR, avers that the appeal was adjudicated in February of 2015, without reference to a specific date. That said, during the deposition plaintiff confirmed with defense counsel that the third level decision issued on February 16, 2015. (Pl.'s Depo. at 25:1.) Thus, it appears the February 16, 2015 date is undisputed.

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Bock, 549 U.S. at 218).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7. Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

1  prisoner's administrative remedies.  See id. § 3084.7(d)(3).

2        A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

      Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision[5] "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),] should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (hereafter "Albino"). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 747 F.3d at 1172.

      A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

---

[5] See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process. Id. at 1032.

11

1    Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third

2    level where appeal granted at second level and no further relief was available).

3          If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

4    failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

5    Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

6          B.  Discussion

7          First, plaintiff failed to provide a declaration in support of his opposition.  Although

8    plaintiff's complaint is verified, he conceded that the grievance process was not completed at the

9    time he filed his complaint.  (ECF No. 1 at 2.)

10         Second, plaintiff's deposition testimony demonstrates that plaintiff is aware of what is

11   required to exhaust administrative remedies.

12         Third, defendants provided undisputed evidence that plaintiff exhausted his administrative

13   remedies as to defendants Singh and Cotter after plaintiff filed the instant action.  While, under

14   limited circumstances, a plaintiff may add newly exhausted claims to an existing action, see

15   Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010) (authorizing amended complaint containing

16   newly exhausted claims based on related conduct that occurred after the filing of the original

17   complaint), generally "a prisoner must exhaust his administrative remedies for the claims

18   contained within his complaint before that complaint is tendered to the district court," id. at 1004,

19   citing McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); and Vaden v.

20   Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006).  Recently, the United States Supreme Court

21   confirmed that district courts are bound by the PLRA's textual mandate requiring all inmates to

22   exhaust administrative remedies before bringing an action in federal court.  See Ross v. Blake,

23   2016 WL 3128839, *5 (June 6, 2016) (refuting a "special circumstance" exception to the rule of

24   exhaustion).  Because plaintiff exhausted his administrative remedies as to defendants Singh and

25   Cotter after he filed the instant action, such claims must be dismissed unless plaintiff can

26   demonstrate that such remedies were unavailable.

27         Fourth, defendants presented unrefuted evidence that plaintiff failed to exhaust his

28   administrative remedies prior to filing the instant action as to defendants Pendergrass and Osurji.

Indeed, plaintiff failed to address the exhaustion of his claims against defendants Pendergrass and Osurji. Review of the grievance against defendants Singh and Cotter reflects that plaintiff did not name Pendergrass or Osurji, and he also did not allege facts suggesting that any psych tech or other prison staff failed to protect plaintiff during the underlying use of force incident. (ECF No. 58-6 at 9-11.) Thus, plaintiff's grievance against defendants Singh and Cotter could not serve to exhaust his claims against defendants Pendergrass and Osurji. In addition, it is undisputed that plaintiff did not file any other appeals related to his claims in this lawsuit, and a review of his appeal history both at CHCF and the third level of review confirm this fact.

Thus, in light of the evidence demonstrating that plaintiff failed to exhaust his administrative remedies prior to filing this action, the burden shifts to plaintiff to demonstrate that administrative remedies were not available to him. However, plaintiff adduces no evidence in support of his opposition. Moreover, plaintiff fails to provide any factual support for his conclusion that he was "led to believe" that he could file a federal civil rights action while exhausting his administrative remedies. Plaintiff does not identify who may have led him to believe this alleged fact, or at what point this allegedly occurred. Nevertheless, court records reflect that plaintiff was previously informed of the exhaustion requirement in his prior civil rights action. Roberson v. Lopez, Case No. 2:06-cv-0484 GEB EFB P (E.D. Cal.). Specifically, on January 17, 2007, plaintiff was advised that "the Ninth Circuit has been clear that a prisoner must exhaust available administrative remedies *before* filing any papers in federal court." Id., citing Vaden v. Summerhill, 449 F.2d at 1051 (ECF No. 45 at 9). On February 27, 2007, the findings and recommendations were adopted, and the motion to dismiss was granted based on plaintiff's failure to exhaust his administrative remedies prior to filing the action. Case No. 2:06-cv-0484 GEB EFB P (ECF No. 46). Thus, plaintiff's bald assertion that he was led to believe he could file a civil rights action during the administrative exhaustion process is unavailing.

Therefore, the undisputed evidence reflects that plaintiff failed to exhaust his administrative remedies prior to filing the instant action, and he also failed to demonstrate that administrative remedies were not available to him. Plaintiff's claims should be dismissed without prejudice.

VII. Alternative Grounds

Because the undersigned finds that plaintiff failed to exhaust his administrative remedies as to all of his claims, the court declines to address defendants' alternative arguments.

VIII. Conclusion

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 58) be granted on the grounds that plaintiff failed to exhaust administrative remedies prior to filing this action; and

2. This action be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 14, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/robe2302.msj